Thank you very much. May it please the Court, my name is Thomas Doyle, no relation. I noticed that on the calendar here. The last 15 minutes or half hour has been a little unsettling hearing my name quite so often ready to stand up. It's a pleasure to be here, and I think we've moved on to the Oregon portion of the proceedings. So what I'd like to do is just to address some of the salient points. I would reserve the remainder of my time. I expect it's going to be around five minutes. But essentially what we have here is an ADA case. Ms. Samper was an employee at a large facility in Portland Hospital as a nurse. This facility is a facility that has an extensive absence process and policy. They have call-ins, they have backups, they have a lot of ways of dealing with absences. They also have a rule that says five absences and you're out. Now those absences are not FMLA absences or otherwise protected. So we have an interesting case here because frequently we don't get to a lot of these issues where the person is covered by the FMLA. But here she was not due to our requirements. She generally works 24 hours a week. So essentially what we have is a question of qualified individual. Our position is that this case was wrongly decided under the qualified individual prong of the ADA. Really we have an undue hardship case. And really we have triable issues of fact under the qualified individual at the very least. And if it had been asserted as an undue hardship case, we certainly would have triable issues of fact there. This is a type of case we start talking about absences and we start talking about the possibility that, look, an employee is asking for unfettered absences. Basically that we get into the question of, okay, is attendance an essential function of the job? And of course, there's no one that disputes attendance is frequently an essential function. But the question is, as we all know under the ADA, is can they do the essential function with or without reasonable accommodation? Let me just, going to the test, you admit, as you've now argued, that the attendance is an essential function. And then does it fall then to the plaintiff to show that she can perform that with or without a reasonable accommodation? I think to establish a prima facie case, that she can show that there was a reasonable accommodation that she asked for that potentially could resolve, that could address and allow her to do the essential functions. Could we go back to that then? Because I kept spinning around in these facts looking for that. She works, at one point she was working more, and then she moved to two days, or two shifts, I should say. I think that's correct. Those are 12-hour shifts. She's now on two shifts, not on a normal or a typical 40- or 30-hour work week. That's right. What accommodation did she ask for? Where do I see where she asked for an accommodation once she's on the two-day or the two-shift program? There's evidence in the record, and this is the deposition testimony specifically, where she says, I asked for variance that this five-day absence policy, this hard and fast rule of five days and you're out, and five parties even, so five absences and you're out, that for my illness, I need flexibility. I need a little bit more than that. Now, where that line is is something that we never get to, but she asks specifically and says in her deposition testimony, I need more flexibility. That's kind of the thing I kept running into is already, the five-day policy is presumably predicated on a full-time employee, so now you have somebody who's working only part-time, and she's saying even within the five absences, I need more flexibility than that. And so did she ever say what flexibility she needed? And there's a couple different ways in terms of talking about flexibility. Now, I would not presume that in health care and nurses that everyone's working these 30-, 40-hour weeks. In fact, nursing with the 12-hour shifts frequently, it's a two- or a three-shift. This isn't in the record, but just as two- or three-hour shifts, or two, three shifts, and then eight days off. So health care is a different animal altogether. But going to the question of, okay, what flexibility do I need? There were, and I know counsel has a calendar that says, look, we gave her days off. One thing she asked for was for leaves of absences in the past, far past. Then also flexibility in terms of scheduling. Hey, due to my fibromyalgia, I have fatigue, and so after being on shift for a couple days, I need extended periods off, so a longer period of time off, and ultimately that results in the two-day shift. Right. And that gets her to, they've accommodated her by already making things. Now she's on the two-day program, and once she's on the two-day program, she says, I still need flexibility. Yes, and the flexibility is relating to, does it have to be a hard and fast rule of five? That's what I'm asking is, does she tell them what that means? I think due to the, she doesn't because she says that it's unpredictable. I need to be able to call in, and once again, I don't want the specter of the idea of a nurse that just doesn't show up. Okay, so that's not what we're talking about. We're talking about someone that calls in and says, I can't come in today, just like anyone else that has a sick day. She says, I need flexibility, that I'm going to need more than five days in a year period when I'm going to have to call in. Can I have that? But how does that work? Does it fall back on itself that she's basically saying, I'm going to be unpredictable, but we just got done saying that some kind of predictable attendance is an essential function of the job? No, I don't. That seems to now be in collision with each other. And I would not say that the, I think it's certainly a question of degree, and I think that the question is that no, and this is the turn of phrase, and you see counsel going back and forth saying, hey, attendance is an essential function. Can you, you know, clearly everyone that works there gets to call in sick. Clearly attendance locks, whether you like it or not, every single day isn't an essential function. Clearly attendance is a flexible concept. The question becomes, okay, how far can you push that? What if, you know, in the scenario of what if she had called in 40 days? Would that make it unreasonable for her to ask for flexibility in that attendance policy? That becomes a balancing question of how much is too much. Here it's seven, two more than what's required. It's a fact-based determination of is that reasonable? And I think the best evidence- Can we stay, so is that, I mean, this is where I'm having some problem. If the employer sets a policy, look, this is what we think is reasonable for us to be able to manage our hospital or our factory or whatever the case may be, but she says, well, I want two more. Did she say two more? She said, don't fire me. I have seven. I realize I have seven. She said before that, flexibility. Now, did she say, I need two more? She didn't say, I need two more. She said, don't fire me. And they said, we're firing you because you have seven. You have two more. Now, I think it's an extremely interesting question of where is that line drawn. And let's say- Who draws it? The concern I have is that you're asking the court to basically inject itself into the hospital management's determination that to run a neonatal intensive care unit, we need to have certain minimal and predictable staffing because we have really sick children here, and we can't be short-staffed. And so to accommodate that, we're going to adopt a policy that says, in addition to sickness that you know about and that you can tell us about well in advance, we're going to give you five, I'll call them floating absences that you can use like a trump card. And what you're saying is, well, but my client needs more than five, and based on the record, it's more than seven, and that she needs to decide how many floating absences she gets. And that's the only reasonable accommodation. And at what point does the law say it's for the employer to decide in the unique facts of this case and not for the court to say, well, we'll let a jury decide what's a reasonable number. I think who's asking the court to do that? I think that the court has a role as a result of asking us. I think you're asking us. And I think the ADA does. The ADA asks, says, look, an employer can have a policy, and if that policy, if changing that policy, altering that policy per se is unreasonable, is if the employer can show that those operational concerns are paramount. Look, we can't, look, let's say they said, we can't have anyone calling in unexcused. We just can't. Unless it's protected, we just can't. And they say, look, because that would leave these children here uncared for. That would be a position that they could take. And if they had evidence to support that, the balancing about whether that is a reasonable rule given the size of the employer. But it seems to me that you're asking us to employ the ADA as a tool to punish an employer who is trying to make some flexibility, even though these are neonatal nurses that we're talking about, who are really important people, and yet allow somebody who wants to go further than what the hospital is offering to say, well, you can't fire me, even because I can't make this very generous policy that you have. We're asking that there be something more than an employer simply saying, we drew a line here at five because we think that's in our best interest. But you've got a record that starts clear back in 2000 of all kinds of meetings and changes that were permitted for your client. And at some point, doesn't the employer have the right to say, look, we have made our effort to accommodate you as reasonably as we can, but you still are insisting on more changes. And we've got an intensive care unit to operate here. And enough is enough. And our primary position is you look at the accommodation that's requested, and you look at whether that accommodation is reasonable. And that past history is the best evidence that in the past they allowed seven, they allowed eight of these. But the past history also shows that some of the absences had nothing to do with fibromyalgia, that it had to do with her husband being on trial for 10 days or kids getting sick. I mean, the kinds of things that, you know, cause people to not be able to come into work. And with all due respect, I would turn the question around. If it was reasonable to have seven in 2006, and it was reasonable to have eight in 2008 or 2007, why isn't it reasonable in 2007? And why isn't there at least a question of fact? So you really do want the courts and juries to decide what the management's reasonable leave policy should be in this case. That's not a question that can be resolved on summary judgment. I think that certainly it can under an undue hardship defense where they are able to show, look, what you are asking is impossible. And the judge can say, look, there's no way that this is going to work. You, once again, let's say we had a 20-person hospital. There's no way that's going to work in our facility. We have someone that's able to present evidence on that. Here there's a paucity of any type of evidence other than bald assertions that, look, that would cause some administrative headache. Those administrative headaches were there in prior years. We are not trying to use, you know, and say, ah, gotcha. We are saying look at what's being asked for. Is it reasonable? And the best evidence of reasonable is that you did it before. Best evidence of reasonable is that you have an entire process. This magic number five is made up. There is no evidence. You know, I mean, that's the question. But I have two problems with the case, and part of it is how to think about it. Because as I read your briefs, I'm all over. Am I in essential function because she can't meet it, or am I in the employer failed to come forward? I couldn't quite figure that out from the briefs, I have to tell you. So that's why I was trying to outline from Bates and other cases exactly who had to prove what. And we have this affidavit where they talk about unscheduled absences and NICU and how hard it is to find these people in special training. Doesn't that then shift the burden back? I'm sorry, I'm referring to the Harrington Declaration. Yeah, and I think going back to the first question of, okay, which camp are we in? Are we into reasonableness or are we into undue hardship? I've been looking at this law for 15 years, and I've been trying to figure out how that was supposed to figure it out, whether you look in the reasonableness, because undue hardship starts sounding a lot like the reasonableness of the accommodation. But I think that the reason that we look at undue hardship is, look, there's an entire process that's designed for dealing with this question of the employer says, no, we can't do that, we can't provide that type of accommodation because it's just going to create too much problem. Now, in terms of the evidence that's in the record, if the employer had some, any evidence that we could respond to of saying, look, we came up with five and this is how. So the bottom line, I guess, just to sum it up because you're running out of time, is that you think there's really just no evidence in the record so that she's created a tribal issue. In fact, they could have solved it if there were evidence in the record potentially, but it's just not there. There is no evidence. That's absolutely right. There's tribal issue of fact that there is no evidence other than from our side about this, about the reasonableness of the accommodation or the unreasonableness of the accommodation. The employer wanted to say this is unreasonable. Seven is unreasonable. That would have been an issue of fact. They didn't even provide that. Nevertheless, there's an issue of fact. And, therefore, we would like to have the remand back. And I've extended my time. Thank you very much. Thank you. Good morning. May it please the Court, Counsel Janine Blatt on behalf of Providence St. Vincent Medical Center. What this case is not about is whether you're allowed five absences and out. The attendance policy, which is quoted in the judge's opinion, clearly talks about planned absences. We can work with those. But then we can't accommodate these intermittent, sporadic, unplanned absences. And the standard for that is five occurrences. It's not five days. It's occurrences. An occurrence is an illness that might extend over more than one day if it's a continuous event. So you could be out for three or four days, but that's one occurrence. So it's not a five days and you're out. And I brought with me a visual aid today, and I believe the Court maybe has it in front of them. It's a calendar for the years 2005 through 2008, and it's highlighted. And the highlighting, if it's a continuous line of highlighting, it represents the leaves of absences, the continuous leaves that she took. The single dates are the dates in the record that she missed work. And I'd like to draw your attention to the years 2007 and into 2008 when she was discharged in April. And what this record reflects is that she was available to work from the end of June through April 16th for 37 weeks. And for her as a two-day-a-week employee, that's 74 shifts. She missed 12 of those shifts on an unpredictable, sporadic basis. Now, that didn't equal 12 occurrences under the dependence policy because some of them were in the same week. They gave her the benefit of the doubt that that was one occurrence if it was the same week. If you do the math, that is an absenteeism rate of 17%. This is not a five-day-and-out policy, as the plaintiff would like you to substitute your judgment for the employer and call it a five-day-and-out. That's not what this is. This is an intensive care nurse with a long record of chronic absenteeism. She's a member of a union. There's a progressive discipline policy. For years, they warned, counseled, tried to work with her to bring her within their attendance policy, and it wasn't working. She continued to have chronic absenteeism. Now, the question today is whether a hospital can require a part-time intensive care nurse to regularly and reliably show up to perform the work for which she was hired. And nothing in the Americans with Disabilities Act says they cannot do that. What the Americans with Disabilities Act requires employers to do is to provide help to those disabled employees who need it to perform the same level of work as their non-disabled peers. What was Ms. Samper hired to do? She was hired to work two days a week in the intensive care unit. Essential function of that job is to be there. She can't do the job anywhere else. The cases from other circuits and even the footnotes in our own decision here with Humphrey versus Memorial Hospital talk about reliable and predictable attendance as an essential job function. It was Ms. Samper's burden to show that she was a qualified individual with a disability under the ADA. There's a two-part inquiry to a qualified individual. One, can she do, you know, she qualified. Does she have the education? Can she perform the functions? And can she do the essential functions of the job with or without reasonable accommodation? It's her burden to prove both. Now, if she says she can do the essential functions, it's the employer's burden to show what those essential functions are and the evidence that shows she's not performing those. That burden of production was met in this case through the declaration of Ms. Harrington. That's the question. It's not the best declaration, to be honest, in the sense of, you know, what we usually see in these cases is somebody lays out, here's why we have a policy. Here's why it's essential, you know, attendance. They say attendance is essential, but they don't say anything about policy and how it gets together and why five occurrences, you know, is generous and why more would be disruptive. There isn't any of that in the record. So that's a real question. Is there a factual issue? I think no. I think what you're going, this is not an undue burden case. It's whether the request in itself for more absences to be able to come to work on an unpredictable basis whenever you're available and able is a reasonable accommodation request. If it's not reasonable, you never get to undue burden, and nobody briefed undue burden. That undue burden was never argued even to the district court. Your position is that meeting the attendance requirement, that her request for accommodation, which is, quote, flexibility without being cabined is an unreasonable end of the analysis at that point? Correct. We put on enough evidence to show that being there at work is an essential job function. Her request is I don't have to be there if my disability doesn't let me be there. That request. You can't meet it without an accommodation. I can't meet that. I can't be there. She's saying I can't be there on a predictable basis, so I need you to let me be there whenever I can make it. That's what she's asking. That is not a reasonable request because being there in the workplace is an essential job function. In the cases from other circuits, because that's the only place she can reliably and predictably perform her job that she was hired to do. She can't perform it anywhere else. If she's not there, she's not performing any essential functions. So as a fundamental nature, being there is a fundamental job, essential job function. And she's asking that the combination she's asking for is to change that essential function of being there. And under the Dark v. Curry case, it makes clear that if your request is asking to change an essential job function, pretty much just eliminate it in this case, it's not reasonable on its face. And in the U.S. Airways case talks about, you know, what a reasonable accommodation is. And the burden is on the plaintiff to first show that her request is reasonable in the ordinary run of cases. And there is not one case that's been presented to this court that shows that a request of this nature is reasonable on its face. There has not been one case cited that has said that this is a reasonable request. So we never get to this undue burden. Another difficulty I had here were the crossing arguments where I thought Providence's argument was that she hadn't actually articulated what accommodation she seeks. She, that is, taking the light, the evidence in the light most favorably to the plaintiff, there is some deposition record where she said what her request was, I just want more absences than everybody else. She never quantified those. She just says, I want to be absent more. That's the, and that's an unreasonable request. Well, it's the whole core of it really is the lack of predictability, isn't it? I mean, if she said, I'm going to have to have kidney dialysis every Tuesday for the next six months, that's one thing to deal with. The other thing is, I don't know when I can come to work. You're exactly right, Your Honor. That's something they could work with. She works two days a week. They could schedule her on different days in advance. They could work with that. It's the unpredictable nature of calling the morning of your shift saying, I'm sorry, I can't be there today. That happened over and over and over again for years. They tried to make adjustments to her schedule. The employer's burden in this case was to help her meet the essential job function of being at work on a predictable basis. They did everything they could to try and do that. They rescheduled her shifts so they weren't back-to-back. She had been working back-to-back shifts. They separated them out. They allowed her to trade shifts with other nurses if she knew in advance and could find a nurse to trade with her. And they allowed her to take, you know, continuous leaves of absence. They also offered, and she declined, a reassignment to an on-call or resource position that would allow this type of unpredictable work or her to work when she was able and willing to work. So there's not a failure to provide accommodations to help her meet the essential function of being there on a predictable basis. The accommodation she requested was not reasonable on its face. And so we never get to this undue burden argument. It was never raised at the district court level by either party. Just as an analogy, Ms. Samper wants to focus this on a policy, but really it is on the predictability of performance of the work. It's really akin to the cases that talk about production standards set by employers. We expect John Doe to create 10 widgets while during his employment. He can only do that while he's there. Well, nurses have to care for babies, these intensive care babies. They have to be there to do it. She's hired to do that two shifts a week. Those two shifts are the quantity of work that this employer hired her to do. The unpredictable nature of her attendance prevented her from meeting that standard. And what she's asking you to do is to substitute the court's judgment for the employer's on, you know, how much unpredictability is too much. In closing, unless there's questions from the court, Providence St. Vincent Hospital asks that you affirm the district court's judgment dismissing Ms. Samper's disability discrimination claims on the basis that she's not a qualified individual because her chronic absenteeism makes her unable to show up for work on a regular and predictable basis, which is an essential job function. Thank you. Thank you. You've used your time. I've used my time. Did you have one last thing you wanted to add? Just the predictability issue. The idea is the predictability is absolutely essential. But, of course, the question of five unpredicted absences versus seven is what the issue is about. Thank you very much for your time. Thank you. And thank both counsel. Samper v. Providence St. Vincent is submitted.
judges: Guy, McKeown, Tallman